UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

EXCEED TALENT CAPITAL, LLC,                )
                                           )
                         Plaintiff,        )
                                           )
            - against -                    )
                                           )
DURK DERRICK BANKS p/k/a LIL DURK,         )
ANDREW BONSU, ONLY THE FAMILY              )
ENTERTAINMENT, INC., OTF LABEL and         )
TTPMG, LLC,                                )
                                           )
                         Defendants.       )
—————————————————————————                  )

Civil Action No. 23-10647

**COMPLAINT**
**AND JURY DEMAND**

Plaintiff Exceed Talent Capital, LLC, by and through its attorneys, Rosenberg, Giger &

Perala P.C., as and for its Complaint against defendants Durk Derrick Banks p/k/a Lil Durk,

Andrew Bonsu, Only the Family Entertainment, Inc., OTF Label and TTPMG, LLC, alleges and

avers as follows:

## NATURE OF THE ACTION

1.      Through this action, plaintiff Exceed Talent Capital, LLC ("plaintiff" or

"Exceed") seeks redress against defendants for their manifest fraud and concomitant breaches of

the parties' Music Revenue Rights Agreement (the "Agreement"), through which defendants

purported to grant Exceed significant rights in connection with a sound recording by defendant

Durk Derrick Banks ("Banks"), a well-known recording artist who is professionally known as Lil

Durk.

2.      In the Agreement, defendants purported to grant Exceed rights in the revenue

streams generated from the exploitation of the Banks recording—rights which the Agreement

expressly contemplated would be the subject of an investment offering facilitated by Exceed, and

which defendants confirmed in the Agreement (albeit falsely) that they had the right and ability to convey to Exceed.

3.    As alleged in more detail below, despite defendants' unambiguous contractual representations and warranties regarding their rights in the Banks recording, Exceed has now learned that Banks previously had assigned to a third party the exact same rights that defendants—including Banks—purported through the Agreement to grant to Exceed; and that, as such, defendants' contractual representations and warranties, upon which Exceed expressly relied in entering into the Agreement and expending substantial resources in connection with the investment offering contemplated thereby, were abjectly false.

4.    As a result of the foregoing—which led to Exceed's termination of the parties' Agreement and compelled its withdrawal of the planned investment offering—Exceed has sustained, and continues to suffer, significant losses and damages, including, *inter alia*, the loss of the substantial funds that Exceed paid to defendants under the Agreement to obtain rights that defendants neither possessed nor had the ability to grant to Exceed and the significant costs and expenses incurred by Exceed in connection with and attendant to the investment offering contemplated by the parties' Agreement.

5.    As defendants have failed and refused to acknowledge any responsibility for their intentional misrepresentations and material contractual breaches, let alone take action to rectify the same, Exceed was compelled to bring the present action to obtain legal redress against defendants for the substantial damages it has sustained by reason of defendants' misconduct and defalcations, which total, in the aggregate, in excess of $12,000,000.

## PARTIES

6.     Exceed is a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business in New York. The sole member of Exceed is Exceed Talent Capital, Ltd., which is organized under the laws of, and has its principal place of business in, Israel. Exceed is the successor in interest to Exceed Talent Capital Holdings LLC.

7.     Defendant Banks is an individual, who, upon information and belief, resides in, and is a citizen of, the State of Illinois.

8.     Defendant Andrew Bonsu ("Bonsu") is an individual, who, upon information and belief, resides in, and is a citizen of, the State of Illinois.

9.     Defendant Only the Family Entertainment, Inc. ("OTFEI") is a corporation organized under the laws of the State of Illinois, which, upon information and belief, has its principal place of business in the State of Illinois.

10.    Defendant OTF Label ("OTF") is an unincorporated business entity, which, upon information and belief, has its principal place of business in the State of Illinois.

11.    Defendant TTPMG, LLC ("TTPMG") is a limited liability company organized under the laws of the State of Illinois. Upon information and belief, all members of TTPMG are residents and citizens of the State of Illinois.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of a State and a citizen of a foreign state and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     The Court has personal jurisdiction over defendants pursuant to the Agreement, which provides that defendants, *inter alia*, "consent[] to and submit[] to the jurisdiction of the federal and state courts located in the State of New York with respect to all disputes, claims or other matters arising out of and/or relating to [the] Agreement" and "waive[] any objection based upon lack of personal jurisdiction or venue, or inconvenient forum." This Court also has personal jurisdiction over defendants pursuant to, *inter alia*, CPLR § 302, as (1) defendants have transacted business in New York, and (as alleged below) with an entity organized under the laws of the State of New York and having a principal place of business in that State, including in connection with the Agreement and the transactions contemplated thereby and, upon information and belief, certain other agreements entered into in this State or with citizens of this State, including the agreement through which Banks conveyed to a third party the same rights that defendants subsequently purported to grant to Exceed; and (2) as to Banks, as he committed tortious acts causing injury to Exceed in this State and regularly conducts business in this State, derives substantial revenue from interstate commerce, including from goods used or consumed in this State, and reasonably should have expected that his tortious acts would have consequences in this State.

## FACTUAL BACKGROUND

14.     Exceed is a financial technology firm whose primary business is in facilitating, through its proprietary investment platform, a broad range of investment opportunities in assets related to entertainers, influencers, creators, athletes and other talent.

15.     In or around mid-2022, Exceed sought to expand its existing business to allow investors to purchase, pursuant to U.S. Securities and Exchange Commission ("SEC")-qualified investment offerings open to investors drawn from the public, ownership interests in entities

holding rights in the revenue streams generated through the exploitation of sound recordings by popular recording artists such as Banks.

16.     In furtherance of that endeavor, in or around the Summer of 2022, Exceed entered into discussions with Oretha Lee, the CEO of music-industry consulting firm TTPMG, and Bonsu, Banks's then business manager and the owner of OTFEI and OTF, concerning the contemplated grant by OTF, OTFEI and TTPMG (collectively, the "OTF/TTPMG Parties") of certain rights in the revenue generated from the exploitation of Banks's sound recording entitled "Bedtime" (the "Recording"). As further alleged below, OTFEI and OTF are, respectively, Banks's "furnishing" company and his "record label." During the course of the parties' discussions concerning the contemplated transaction, the OTF/TTPMG Parties and Bonsu assured Exceed that they possessed the power and lawful authority to convey those rights to Exceed.

17.     Following the parties' discussions and negotiations, on (or "as of") August 3, 2022, Exceed, on the one hand, and the OTF/TTPMG Parties, on the other hand, entered into the Agreement which, as further alleged below, purported, *inter alia*, to grant Exceed significant rights in the revenue streams generated from the "use [of] the Recording or any element thereof, in whole or in part, and any underlying musical compositions in any and all media."

18.     Although Banks is not expressly defined in the Agreement as a direct party thereto, Banks nonetheless executed the Agreement on its signature page in his individual capacity.

19.     Banks also executed a contractual inducement (the "Inducement"), which was appended to and incorporated into the Agreement, pursuant to which Banks, *inter alia*, expressly (1) "confirm[ed] the authority of [the OTF/TTPMG Parties] to grant the rights and furnish

[Banks's] Services in accordance with the provisions thereof"; and (b) confirmed that, "[a]s a material inducement to [Exceed], [Banks] agree[s] to abide and be personally bound by the terms and provisions of [the] Agreement as if [he] were a direct party thereto." As such, for that independent reason, Banks *de facto* is a party to the Agreement, and is subject to the terms and provisions thereof in his individual capacity.

20.     Bonsu executed the Agreement as "MANGER[*sic*]/OWNER" of both OTFEI and OTF.

21.     OTFEI is Banks's furnishing company—the entity that provides (*i.e.*, "furnishes"), and through which Banks pursues, certain of his professional music and related business activities, including, upon information and belief, his activities as a recording artist.

22.     OTF is Banks's record label and is, upon information and belief, an unincorporated business entity. As such, OTF has no legal existence separate and apart from its owner, Bonsu, and Bonsu thus *de facto* is a party to the Agreement in his individual capacity.

23.     As a concomitant to the Agreement's purported grant to Exceed of rights in the revenue streams generated from the exploitation of the Recording, the Agreement expressly contemplates Exceed's facilitation of an investment offering through which it would convey to investors fractional ownership interests in an entity created by Exceed to receive that income (the "Offering").

24.     In that regard, the Agreement expressly provides—and defendants confirmed in the Agreement that they were "aware and acknowledge"—that Exceed "intends to enter into a process with the [SEC] under Regulation A, or similar regulation, such as Regulation Crowd Funding, for the SEC's qualification of [Exceed's] issuance to the general public of shares, tokens or other units representing securities in the economic substance of the Agreement"; and

that such "Shares may be sold or issued to eligible purchasers and [defendants are] supportive of" the Offering.

26. In furtherance of the foregoing, the Agreement expressly required defendants to "do all acts and things, including executing and providing any related documents and information promptly" to effectuate the Offering.

26. The express terms of the Agreement further required defendants to (1) ensure that all of the revenue and other amounts generated from the exploitation of the Recording "be paid to an account designated by [Exceed] in perpetuity" and (2) cause EMPIRE Distribution, Records and Publishing Inc. ("Empire")—which defendants represented to Exceed (albeit once again falsely) possessed the exclusive distribution rights in respect of the Recording—"to commercially release and promote the Recording in accordance with a release plan that is at least as widespread as the release plan for [Banks's] most successful song to date."

27. Pursuant to the Agreement, in consideration for the rights ostensibly granted to Exceed thereunder, Exceed agreed to pay the OTF/TTPMG Parties "a flat fee" in the amount of $600,000, payable in three installments, *i.e.*, (1) fifty percent, *i.e.*, $300,000, "following satisfaction of [certain contractually-specified] Conditions Precedent"; (2) twenty-five percent, *i.e.*, an additional $150,000, upon the delivery of the Recording to Exceed; and (3) twenty-five percent *i.e.*, the remaining $150,000, upon the later to occur of (a) Banks's satisfaction of certain contractually-specified social media obligations that he assumed pursuant to the Agreement, or (b) the first sale of certain non-fungible tokens featuring Banks's "name, voice, likeness, image, performance or other publicity rights," as also specified in the Agreement.

28.     TTPMG is designated in the Agreement as the entity to which those payments were to be directed in the first instance, through wire transfers to a TTPMG bank account specified in the Agreement.

29.     In the Agreement, defendants made a number of material representations and warranties upon which Exceed expressly relied in entering into and performing thereunder—including by remitting the first two contractually-required payments to the OTF/TTPMG Parties, totaling, in the aggregate, $450,000.

30.     Specifically, defendants—including the OTF/TTPMG Parties who, collectively, are falsely represented in the Agreement to be the "Owner" of the Recording—represented and warranted in section 2 of the Standard Terms and Conditions incorporated in the Agreement, *inter alia*, as follows:

  a.   that they possess "the right, power and authority to enter into this Agreement and to cause [Banks] to fully perform all of [his] obligations hereunder without having to seek or obtain approval or permission from any third party";

  b.   that "neither [the OTF/TTPMG Parties] nor [Banks] is nor will be subject to any obligation, legal disability or restriction which will prevent either of them from fully complying with their obligations hereunder or which will create any liability on the part of [Exceed]";

  c.   that "the Recording and the underlying composition and lyrics are original to [the OTF/TTPMG Parties] and [Banks], respectively, and does [*sic*] not violate or infringe upon the intellectual property or other rights of any other person or entity";

d.  that "the performance by [the OTF/TTPMG Parties] and [Banks] of each of their obligations hereunder, and the exercise by [Exceed] of the rights granted herein (including without limitation . . . the use of [Banks's] Name and Likeness . . . and the collection and distribution of Gross Revenue) will not violate or infringe upon the rights of any third parties";

e.  that "entering into this Agreement will not violate the terms and conditions of any agreement between [the OTF/TTPMG Parties] and/or [Banks] and any third party"; and

f.  that "other than [Empire] and [Banks] pursuant to the Empire Distribution Agreement, no other person or entity is entitled to receive any Music Revenue" generated from the exploitation of the Recording.

31.     As further alleged below, Exceed now has become aware that each of the aforesaid contractual representations and warranties is false.

32.     The foregoing contractual representations and warranties were known by defendants to be false at the time they were made, *i.e.*, when the parties entered into the Agreement, and were intended by defendants to deceive Exceed and induce it to act in reliance on said representations and warranties in entering into and performing under the Agreement, including by paying the OTF/TTPMG Parties the payments required by the Agreement.

33.     Following the parties' entry into the Agreement, Banks publicly announced and heavily promoted the Offering, including through social media and a widely-disseminated press release. Banks's press release, which was quoted in its entirety in numerous prominent industry publications, reads as follows: "Where I'm from, few own anything. As The Voice of the Trenches and for my label OTF, I'm always looking for ways to expand and give back to my

people. Exceed makes it possible for my fans to become part of my team and share in our success together."

34.     Exceed also widely advertised and promoted the Offering, including, *inter alia*, through social media channels, Exceed's extensive email lists, web advertisements and numerous other forums. In addition, Exceed devoted significant time, effort and financial resources in seeking and obtaining required SEC qualification for the Offering.

35.     In accordance with the Agreement, on August 3, 2022 and August 15, 2022, Exceed made the first two contractually-contemplated payments to the OTF/TTPMG Parties, totaling, in the aggregate, $450,000.

36.     The OTF/TTPMG Parties remitted a portion of the $450,000 paid to them by Exceed under the Agreement to Banks or to an entity owned and/or controlled by Banks.

37.     Despite defendants' aforesaid detailed, comprehensive, express contractual representations and warranties, on May 24, 2023 Exceed received a demand letter from Alamo Records ("Alamo"), a record label that is owned and/or controlled by Sony Music Entertainment, advising Exceed that Banks was signed to an exclusive recording agreement with Alamo and that neither defendants nor Empire possess any right, *inter alia*, to assign any interest in the revenue streams generated by exploitations of the Recording; to permit the sale of any interests in those revenue streams; or to license the use of Banks's image and likeness in connection with the Recording.

38.     Rather, as Alamo informed Exceed, Alamo possesses those (and a number of further) exclusive rights pursuant to an agreement that Alamo entered into with Banks (or OTFEI) in or around April of 2021 (as subsequently amended), *i.e.*, well over a year *before* defendants entered into, respectively, the Agreement and the Inducement.

39.     Upon becoming apprised of this troubling information—which, Exceed learned only after expending substantial time, effort and financial resources in pursuing the Offering, including, without limitation, making the first two of the contemplated installment payments to the OTF/TTPMG Parties under the Agreement, in the aggregate amount of $450,000 (funds that, as alleged above, were distributed, in part, to Banks)—Exceed repeatedly demanded that defendants rectify their manifest contractual breaches, only to be met with resounding silence.

40.     After defendants utterly ignored Exceed's entreaties and refused to refund to Exceed any portion of the $450,000 it had already paid to the OTF/TTPMG Parties, on July 19, 2023 Exceed provided written notice to the OTF/TTPMG Parties pursuant to Section 6 of the Standard Terms and Conditions incorporated in the Agreement of their material breach of the Agreement and their concomitant obligation under Section 6 thereof to cure said breach within seven business days of their receipt of that notice.

41.     Section 6 of the Agreement, entitled "Termination," provides as follows:

> (a) In the event a Party materially breaches its obligations hereunder, the other Party may terminate this Agreement by written notice if such breach is not curable or if such breach is curable but the breaching Party does not cure the breach within seven (7) business days (or such shorter time as exigencies may require). Any termination of this Agreement by [Exceed] as a result of a material breach by Owner, shall result in a termination penalty becoming payable of US$600,000 (six hundred thousand US dollars) (the "Termination Penalty"). The Termination Penalty is payable without prejudice to any other claims, rights and remedies [Exceed] may have in accordance with applicable law and/or the provisions of this Agreement.
>
> (b) The termination of this Agreement by the injured Party is a non-exclusive remedy and is without prejudice to any claims, rights and remedies it may have towards the breaching Party. The termination of this Agreement by the injured Party does not relieve the breaching Party of any of its obligations or liabilities under this Agreement or by law.

42.     As defendants failed to cure—or, to Exceed's knowledge, even take any steps to attempt to cure—their undisputed material breaches of the Agreement, on August 1, 2023 Exceed transmitted a Notice of Termination of the Agreement (the "Notice of Termination") to defendants.

43.     As expressly set forth in the Section 6 of the Agreement, Exceed's termination of the Agreement "as a result of a material breach by" defendants "shall result in" the $600,000 termination payment (the "Termination Payment") becoming immediately due and payable to Exceed, albeit without limitation of or prejudice to any other rights, remedies and claims that Exceed may possess as a result of defendants' contractual breaches and other defalcations.

44.     In response to Exceed's Notice of Termination, defendants acknowledged, *sub silentio*, their lack of any cognizable excuse or justification for their contractual breaches and other failings, *i.e.*, despite Exceed's repeated entreaties, defendants have failed and refused to remit any portion of the Termination Payment to Exceed; to attempt to remedy their manifest contractual breaches and other lapses; or to demonstrate any willingness to take responsibility for the substantial losses that Exceed has suffered, and continues to sustain, as the direct result of defendants' contractual and related breaches summarized above.

45.     As a result of defendants' aforesaid material misrepresentations, contractual breaches and other failings, Exceed was compelled, *inter alia*, to cancel and withdraw the Offering—which Exceed had expended significant time, effort and financial resources in registering with the SEC, ensuring compliance with SEC rules and regulations and marketing and promoting—and to return the funds that had been invested by third parties in the Offering, further significantly damaging Exceed's reputation and relationships with its partners and investors.

46.     As defendants have failed and refused to attempt to remedy or take any responsibility for their intentional misrepresentations and material contractual breaches, Exceed was compelled to bring the present action against them.

## COUNT I
## BREACH OF CONTRACT
### (Against All Defendants)

47.     Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

48.     The Agreement is a binding contractual undertaking that sets forth defendants' obligations to Exceed and contains numerous material contractual representations and warranties by defendants, as summarized in paragraphs 17, 19, 24-27 and 30 of this Complaint, above.

49.     As a result of Banks's execution of the Inducement, Banks *de facto* is a party to the Agreement and is jointly and severally liable thereunder in his individual capacity as if he was a direct party thereto.

50.     As Bonsu executed the Agreement in his capacity as "Owner" of OTF, and as OTF is an unincorporated business entity, Bonsu *de facto* is a party to the Agreement and is jointly and severally liable thereunder in his individual capacity as if he was a direct party thereto.

51.     As alleged above, defendants' foregoing contractual representations and warranties were false in numerous material respects, each of which constitutes a material breach of the Agreement by defendants.

52.     Defendants' failures to comply with their other contractual obligations, as alleged above, also constitute material breaches of the Agreement by defendants.

53.     As a direct and proximate result of defendants' aforesaid contractual breaches, Exceed has sustained, and continues to suffer, significant foreseeable losses including, without limitation, the $450,000 that Exceed paid to the OTF/TTPMG Parties under the Agreement, no portion of which has been returned to Exceed despite its repeated demand therefor; the substantial costs and expenses that Exceed incurred in marketing and promoting the Offering and in registering the Offering with the SEC and ensuring its compliance with SEC rules and regulations; and the significant damages that Exceed has sustained, and continues to suffer, by reason of defendants' acts and omissions, including, without limitation, the substantial foundational injury to Exceed's business and operations, and its compelled withdrawal of the Offering and concomitant return of investor funds.

54.     In addition to the foregoing, as Exceed was compelled to terminate the Agreement as a result of defendants' material contractual breaches, defendants also are liable to Exceed under the express terms of the Agreement for the $600,000 Termination Payment.

55.     Exceed has been damaged by defendants' aforesaid contractual breaches in an amount to be determined at trial, which, Exceed believes, and thus avers, is in an amount in excess of $12,000,000.

## COUNT II
## <u>BREACH OF IMPLIED COVENANT</u>
### <u>(Against All Defendants)</u>

56.     Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

57.     In the alternative and/or as a concomitant to Count I, and without waiver of or prejudice to the claim asserted therein, defendants breached the covenant of good faith and fair

dealing implicit in the Agreement through their acts and omissions described in the preceding paragraphs of this Complaint.

58.     Defendants' aforesaid conduct, including, *inter alia*, their intentional misrepresentations that were intended to and did induce Exceed to enter into and perform under the Agreement and their failure to address or rectify their conduct in derogation of Exceed's legal rights, destroyed the right of Exceed to receive the benefit of the Agreement, and, as alleged above, caused Exceed to suffer significant foreseeable losses and damages.

59.     Specifically, albeit without limitation, as the direct and proximate result of defendants' breaches of the implied covenant of good faith and fair dealing, Exceed suffered losses and damages including, without limitation, the $450,000 that Exceed paid to the OTF/TTPMG Parties under the Agreement, no portion of which has been returned to Exceed despite its repeated demand therefor; the substantial costs and expenses that Exceed incurred in marketing and promoting and Offering and in registering that Offering with the SEC and ensuring its compliance with SEC rules and regulations; and the significant damages that Exceed has sustained, and continues to suffer by reason of defendants' acts and omissions, including, without limitation, the substantial foundational injury to Exceed's business and operations, and its compelled withdrawal of the Offering and concomitant return of investor funds.

60.     In addition to the foregoing, as Exceed was compelled to terminate the Agreement as a result of defendants' material contractual breaches, defendants also are liable to Exceed under the express terms of the Agreement for the $600,000 Termination Payment.

61.     As a result of Banks's execution of the Inducement, Banks *de facto* is a party to the Agreement and is jointly and severally liable thereunder in his individual capacity as if he was a direct party thereto.

62.     As Bonsu executed the Agreement in his capacity as "Owner" of OTF, and as OTF is an unincorporated business entity, Bonsu *de facto* is a party to the Agreement and is jointly and severally liable thereunder in his individual capacity as if he was a direct party thereto.

63.     Exceed has been damaged by defendants' aforesaid breaches of the covenant of good faith and fair dealing implied in the Agreement in an amount to be determined at trial, which, Exceed believes, and thus avers, is in an amount in excess of $12,000,000.

**COUNT III**
**FRAUD**
**(Against Defendant Durk Derrick Banks p/k/a Lil Durk)**

64.     Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

65.     In the alternative to Counts I and II, and without waiver of or prejudice to the claims asserted therein, if defendant Banks is determined not to be bound by the terms of the Agreement in his individual capacity (although Exceed avers that there is no legal or factual basis for such a determination), Banks is liable to Exceed for his fraudulent misrepresentations and those of his agents set forth in the Agreement, upon which Exceed expressly relied to its detriment in entering into the Agreement and performing thereunder.

66.     Bonsu, as Banks's business manager at the time the parties entered into the Agreement, acted as Banks's agent in connection with the transaction contemplated thereby.

67.     OTFEI, as Banks's furnishing company, also acted as Banks's agent in connection with the Agreement and the transactions contemplated thereby.

68.     Additionally, as further alleged above, the OTF/TTPMG Parties represented both in the Agreement and in the preceding discussions and negotiations with Exceed that they

possessed the authority to grant to Exceed the rights in Banks's Recording as contemplated thereby and, as such (and otherwise), the OTF/TTPMG Parties acted as Banks's agents in connection with the Agreement and the transactions contemplated thereby.

69.    In entering into the Agreement, Bonsu, OTFEI and the other OTF/TTPMG Parties acted within the scope of their actual and/or apparent authority as agents of Banks.

70.    As alleged in paragraphs 16, 17, 19, 26 and 30, above, defendants knowingly and intentionally made numerous misrepresentations of fact to Exceed in the Agreement and in the preceding discussions and negotiations, including:

    a.   that defendants possessed the power and lawful authority to convey to Exceed rights in the revenue generated from the exploitation of the Recording;

    b.   that the Agreement granted Exceed rights in the revenue streams generated from the "use [of] the Recording or any element thereof, in whole or in part, and any underlying musical compositions in any and all media";

    c.   as to Banks, that the OTF/TTPMG Parties possessed the authority to grant the rights and furnish [Banks's] Services in accordance with the provisions" of the Agreement;

    d.   as to Banks, that Banks will "abide and be personally bound by the terms and provisions of [the] Agreement as if [he] were a direct party thereto";

    e.   that all of the revenue and other amounts generated from the exploitation of the Recording will "be paid to an account designated by [Exceed] in perpetuity";

    f.   that Empire possessed the exclusive distribution rights in respect of the Recording;

g.  that defendants will cause Empire "to commercially release and promote the Recording in accordance with a release plan that is at least as widespread as the release plan for [Banks's] most successful song to date";

h.  that defendants possessed "the right, power and authority to enter into [the] Agreement and to cause [Banks] to fully perform all of [his] obligations [t]hereunder without having to seek or obtain approval or permission from any third party";

i.  that "neither [the OTF/TTPMG Parties] nor [Banks] is nor will be subject to any obligation, legal disability or restriction which will prevent either of them from fully complying with their obligations [under the Agreement] or which will create any liability on the part of [Exceed]";

j.  that "the Recording and the underlying composition and lyrics are original to [the OTF/TTPMG Parties] and [Banks], respectively, and does [*sic*] not violate or infringe upon the intellectual property or other rights of any other person or entity";

k.  that "the performance by [the OTF/TTPMG Parties] and [Banks] of each of their obligations [under the Agreement], and the exercise by [Exceed] of the rights granted [t]herein (including without limitation . . . the use of [Banks's] Name and Likeness . . . and the collection and distribution of Gross Revenue) will not violate or infringe upon the rights of any third parties";

l.  that "entering into [the] Agreement will not violate the terms and conditions of any agreement between [the OTF/TTPMG Parties] and/or [Banks] and any third party"; and

    m.  that "other than [Empire] and [Banks] pursuant to the Empire Distribution Agreement, no other person or entity is entitled to receive any Music Revenue" generated from the exploitation of the Recording.

71.    Defendants made the foregoing misrepresentations of fact to Exceed with the intent to defraud and deceive Exceed and induce it to act in reliance thereon in entering into and performing under the Agreement, including by remitting to the OTF/TTPMG Parties payments required by the Agreement.

72.    Exceed reasonably relied to its detriment on defendants' aforesaid misrepresentations of fact in entering into and performing under the Agreement, including by remitting to the OTF/TTPMG Parties payments required by the Agreement.

73.    As alleged above, the OTF/TTPMG Parties paid a portion of the amounts remitted to them by Exceed under the Agreement to Banks or to an entity owned by Banks. By accepting and retaining the benefits derived from Bonsu's, OTFEI's and the other OTF/TTPMG Parties' misrepresentations of fact, and Banks's other conduct alleged earlier herein, including, without limitation, his promotion of the Offering, Banks ratified those defendants' fraudulent acts.

74.    As a result of the foregoing fraud by Banks, Exceed has been damaged in an amount to be determined at trial, which, Exceed believes, and thus avers, is in an amount in excess of $12,000,000.

## **PRAYERS FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, plaintiff Exceed Talent Capital, LLC respectfully requests that the Court enter judgment in plaintiff's favor and against defendants, as follows:

A.    Awarding plaintiff compensatory damages in an amount to be determined at trial;

B.    Awarding plaintiff punitive or exemplary damages against Banks in an amount to be determined at trial;

C.    Awarding plaintiff its attorneys' fees and costs incurred as a result of defendants' misconduct, including, the fees and costs incurred in connection with the Offering and in connection with this action; and

D.    Granting such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff Exceed Talent Capital, LLC hereby requests a jury trial on all claims and issues raised in this action that are so triable.

Dated:   December 6, 2023
         New York, New York

                                      **ROSENBERG, GIGER & PERALA P.C.**


                                      By:_____
                                          John J. Rosenberg
                                          Brett T. Perala
                                          152 W. 57th Street, 18th Floor
                                          New York, NY  10019
                                          (646) 494-5000

                                          *Attorneys for Plaintiff*