UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

EXCEED TALENT CAPITAL, LLC,                )
                                           )
                                           )    Case No. 23cv10647 (GHW)(RWL)
                    Plaintiff,             )
                                           )
           - against -                     )    **SECOND AMENDED**
                                           )    **COMPLAINT AND**
                                           )    <u>**JURY DEMAND**</u>
DURK DERRICK BANKS p/k/a LIL DURK,         )
ANDREW BONSU, ONLY THE FAMILY              )
ENTERTAINMENT, INC., OTF LABEL and         )
TTPMG, LLC,                                )
                                           )
                    Defendants.            )
_____   )

     Plaintiff Exceed Talent Capital, LLC, by and through its attorneys, Rosenberg, Giger &

Perala P.C., as and for its Second Amended Complaint against defendants Durk Derrick Banks

p/k/a Lil Durk, Andrew Bonsu, Only the Family Entertainment, Inc., OTF Label and TTPMG,

LLC, alleges and avers as follows:

<u>**NATURE OF THE ACTION**</u>

     1.     Through this action, plaintiff Exceed Talent Capital, LLC ("plaintiff" or

"Exceed") seeks redress against defendants for their manifest fraud and concomitant breaches of

the parties' Music Revenue Rights Agreement (the "Agreement"), through which defendants

purported to grant Exceed significant rights in connection with a sound recording by defendant

Durk Derrick Banks ("Banks"), a well-known recording artist who is professionally known as Lil

Durk.

     2.     In the Agreement, defendants purported to grant Exceed rights in the revenue

streams generated from the exploitation of the Banks recording—rights which the Agreement

expressly contemplated would be the subject of an investment offering facilitated by Exceed, and

which defendants confirmed (albeit falsely) both in the negotiations preceding the parties' entry into the Agreement, and in the Agreement itself, that they had the right and ability to convey to Exceed.

3.      As alleged in more detail below, despite defendants' unambiguous pre-contractual and contractual representations and warranties regarding their rights in the Banks recording, Exceed has now learned that Banks previously had assigned to a third party the exact same rights that defendants—including Banks—purported through the Agreement to grant to Exceed; and that, as such, defendants' representations and warranties, upon which Exceed expressly relied in entering into the Agreement and expending substantial resources in connection with the investment offering contemplated thereby, were abjectly false.

4.      As a result of the foregoing—which led to Exceed's termination of the Agreement and compelled its withdrawal of the planned investment offering—Exceed has sustained, and continues to suffer, significant losses and damages, including, *inter alia*, the loss of the substantial funds that Exceed paid to defendants under the Agreement to obtain rights that defendants neither possessed nor had the ability to grant to Exceed; the significant costs and expenses incurred by Exceed in connection with and attendant to the investment offering contemplated by the Agreement; and the profits/revenues that Exceed reasonably and foreseeably expected to generate from the offering.

5.      As defendants have failed and refused to acknowledge any responsibility for their intentional misrepresentations and material contractual breaches, let alone take action to rectify the same, Exceed was compelled to bring the present action to obtain legal redress against defendants for the substantial damages it has sustained by reason of defendants' misconduct and defalcations, which total, in the aggregate, in excess of $12,000,000.

## PARTIES

6.      Exceed is a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business in New York. The sole member of Exceed is Exceed Talent Capital, Ltd., which is organized under the laws of, and has its principal place of business in, Israel. Exceed is the successor in interest to Exceed Talent Capital Holdings LLC.

7.      Defendant Banks is an individual, who, at the time this action was commenced, upon information and belief, resided in, and was a citizen of, the State of Illinois. Banks currently is incarcerated at the Metropolitan Detention Center in Los Angeles, California.

8.      Defendant Andrew Bonsu ("Bonsu") is an individual, who resides in, and is a citizen of, the State of Illinois. Bonsu failed to appear or defend in this action and, as such, a default was entered against him on April 29, 2024. Exceed has continued in the Second Amended Complaint to identify Bonsu as a defendant for clarity and completeness, but in doing so does not waive or rescind (or otherwise affect) the previously-entered default, and reserves all rights with respect thereto.

9.      Defendant Only the Family Entertainment, Inc. ("OTFEI") is a corporation organized under the laws of the State of Illinois, which, upon information and belief, has its principal place of business in the State of Illinois.

10.     Defendant OTF Label ("OTF") is an unincorporated business entity, which, upon information and belief, has its principal place of business in the State of Illinois.

11.     Defendant TTPMG, LLC ("TTPMG") is a limited liability company organized under the laws of the State of Illinois. Upon information and belief, all members of TTPMG are residents and citizens of the State of Illinois. TTPMG failed to appear or defend in this action

3

and, as such, a default was entered against it on June 17, 2024. Exceed has continued in the Second Amended Complaint to identify TTPMG as a defendant for clarity and completeness, but in doing so does not waive or rescind (or otherwise affect) the previously-entered default, and reserves all rights with respect thereto.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of a State and a citizen of a foreign state and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     The Court has personal jurisdiction over defendants pursuant to the Agreement, which provides that defendants, *inter alia*, "consent[] to and submit[] to the jurisdiction of the federal and state courts located in the State of New York with respect to all disputes, claims or other matters arising out of and/or relating to [the] Agreement" and "waive[] any objection based upon lack of personal jurisdiction or venue, or inconvenient forum." This Court also has personal jurisdiction over defendants pursuant to, *inter alia* CPLR § 302, as (1) defendants have transacted business in New York, with, *inter alia*, (as alleged below) an entity organized under the laws of the State of New York and having a principal place of business in that State, including in connection with the Agreement and the transactions contemplated thereby and, upon information and belief, certain other agreements entered into in this State or with citizens of this State, including the agreement through which Banks conveyed to a third party the same rights that defendants subsequently purported to grant to Exceed; and (2) as to Banks and Bonsu, as they each committed tortious acts causing injury to Exceed in this State and regularly conduct business in this State, derive substantial revenue from interstate commerce, including from goods

used or consumed in this State, and reasonably should have expected that their tortious acts would have consequences in this State.

## **FACTUAL BACKGROUND**

14.    Exceed is a financial technology firm whose primary business is in facilitating, through its proprietary investment platform, a broad range of investment opportunities in assets related to entertainers, influencers, creators, athletes and other talent.

15.    In or around mid-2022, Exceed sought to expand its existing business to allow investors to purchase, pursuant to U.S. Securities and Exchange Commission ("SEC")-qualified investment offerings open to investors drawn from the public, ownership interests in entities holding rights in the revenue streams generated through the exploitation of sound recordings by popular recording artists such as Banks.

16.    In furtherance of that endeavor—which was one of Exceed's first forays into the music industry—in or around June of 2022, Exceed entered into discussions with Oretha Lee ("Lee"), the CEO of music-industry consulting firm TTPMG, and Bonsu, Banks's then manager and the owner of OTFEI and OTF, concerning the contemplated grant by OTF, OTFEI and TTPMG (collectively, the "OTF/TTPMG Parties") of certain rights in the revenue generated from the exploitation of Banks's sound recording entitled "Bedtime" (the "Recording"). As further alleged below, OTFEI and OTF are, respectively, Banks's "furnishing" company and his "record label." During the course of the parties' discussions concerning the contemplated transaction, which occurred between late June and early August of 2022, the OTF/TTPMG Parties and Bonsu assured Exceed that they and Banks possessed the power and lawful authority to convey those rights to Exceed.

17.     In that regard, in late June and early July of 2022, Lee and Bonsu, who were located in Chicago, Illinois, engaged in negotiations by telephone and email with Exceed, through its New York City-based representative, Anthony Martini ("Martini"), concerning the OTF/TTPMG Parties' claimed authority to grant Exceed rights in the Recording. Those discussions culminated in the joint drafting by the parties in early July of 2022 of a two-page term sheet (the "Term Sheet").

18.     In the Term Sheet, OTF and TTPMG expressly represented that (a) they are "the owner of the Intellectual Property Rights" in the Recording; (b) the Recording was "currently distributed by Empire Records" ("Empire"); and (c) the OTF/TTPMG Parties possessed the right and ability to enter into a "collaboration [with Exceed] involving (i) the issuance of fungible or non-fungible tokens based on, or linked to, the [Recording] (the 'NFTs'); and (ii) one or more public issuances of securities (the 'Securities') to enable fans and other investors to benefit from the future income streams generated by, or because of, the [Recording] and/or the NFTs."

19.     The Term Sheet further sets forth the precise nature of the contemplated rights that the OTF/TTPMG Parties represented that they possessed the ability to grant to Exceed through the parties' proposed "collaboration," *i.e.*, "(i) 50% of the Intellectual Property Rights attaching to the [Recording], any royalty, or other, income generated by, or because of, the [Recording], including all contract rights, licences, merchandising, logo and general rights relating to it, and any of [OTF's and TTPMG's] right to receive payments under such arrangements ('Song Income Rights'); and (ii) [the right] to create, host and issue NFTs and/or Securities, on a blockchain or other ledger selected by Exceed; and (iii) Song Income Rights, inter alia, the usage rights described above, name and likeness rights of the Artists, and the rights to use any related artwork."

6

20.    On July 7, 2022, Lee returned the Term Sheet to Martini, Exceed's representative, by email, signed and dated (and each page initialed) by Bonsu as "Authorized representative for Artist," *i.e.*, Banks.

21.    During the next approximately three weeks, Exceed and the OTF/TTPMG Parties continued their discussions and negotiations to finalize the terms of the contemplated transaction.

22.    In the course of those discussions, on July 21, 2022, Lee and an Exceed representative based in Tel Aviv, Israel, Phil Schajer ("Schajer"), communicated by email and telephone concerning the economic rights in the Recording that the OTF/TTPMG Parties represented that they possessed the authority to grant to Exceed and the role that Empire— which, in the July 21, 2022 telephone conversation, Lee again represented to Exceed possessed the exclusive distribution rights in respect of the Recording—would occupy in respect of the contemplated transaction. In that regard, Lee represented in a July 21, 2022 email to Schajer that "Empire collects keep [*sic*] their contracted cut and disburse to appropriate party [*sic*] which in this case is you"; that a "Million Streams will Break even"; and that "Lil Durk exposure to his music is 200 million streams a month on you tube, Spotify and Apple Music combine [*sic*]," *i.e.*, Empire possessed the right to distribute the Recording through streaming and other channels and to collect revenue from such exploitations, and Exceed would be entitled to a "disburse[ment]" of its share of that revenue. In a further representation regarding the economic aspects of the proposed transaction, Lee attached to her email "a Memo of the Industry and a clear example of the financial infrastructure for the distribution, production and artist signed to labels revenue share goes [*sic*]."

23.    As the parties worked to finalize the binding agreement memorializing the contemplated transaction, on July 27, 2022, Schajer (who, as noted, was based in Israel)

transmitted an email to Lee (who, as noted, was based in Chicago), attaching the "revised docs, incorporating the corrected economics and sharing"—*i.e.*, the revenue share from exploitations of the Recording that the OTF/TTPMG Parties had confirmed they had the authority to grant to Exceed—and Schajer requested, *inter alia*, that Lee "[k]indly please ask your lawyers to confirm that Andrew [Bonsu] (or whoever is signing) is properly authorized to bind" OTF and OTFEI. On July 28, 2022, Lee responded by email to Schajer, Martini and another Exceed representative, Yori Nelken ("Nelken"), copying a Chicago-based attorney, Daryl Jones, Esq. ("Jones"), whom Lee represented was "The Labels and Durks [*sic*] attorney to answer your questions, regarding Andrew [Bonsu's] ability to bind the contracts."

24.     On July 28, 2022, Jones replied to Lee's email, in an email that he transmitted to Lee and the three Exceed representatives, *i.e.*, Martini, Schajer and Nelken, stating that "My firm represents Only the Family Entertainment, Inc. ('OTF')" and that "Mr. Andrew Bonsu is a principal in the company, and has authority to sign contracts on the company's behalf."

25.     Following the parties' discussions and negotiations, on (or as of) August 3, 2022, Exceed, on the one hand, and the OTF/TTPMG Parties, on the other hand, entered into the Agreement which, as further alleged below, purported, *inter alia*, to grant Exceed significant rights in the revenue streams generated from the "use [of] the Recording or any element thereof, in whole or in part, and any underlying musical compositions in any and all media."

26.     Although Banks is not expressly defined in the Agreement as a direct party thereto, Banks nonetheless executed the Agreement on its signature page in his individual capacity.

27.     Banks also executed a contractual inducement (the "Inducement"), which was appended to and incorporated into the Agreement, pursuant to which Banks, *inter alia*, expressly

(1) "confirm[ed] the authority of [the OTF/TTPMG Parties] to grant the rights and furnish [Banks's] Services in accordance with the provisions thereof"; and (b) confirmed that, "[a]s a material inducement to [Exceed], [Banks] agree[s] to abide and be personally bound by the terms and provisions of [the] Agreement as if [he] were a direct party thereto." As such, for that independent reason, Banks *de facto* is a party to the Agreement, and is subject to the terms and provisions thereof in his individual capacity.

28.    Bonsu executed the Agreement as "MANGER[*sic*]/OWNER" of both OTFEI and OTF.

29.    OTFEI is Banks's furnishing company—the entity that provides (*i.e.*, "furnishes"), and through which Banks pursues, certain of his music and related business activities, including, upon information and belief, his activities as a recording artist.

30.    OTF is Banks's record label and is, upon information and belief, an unincorporated business entity. As such, OTF has no legal existence separate and apart from its owner, Bonsu, and Bonsu thus *de facto* is a party to the Agreement in his individual capacity.

31.    As a concomitant to the Agreement's purported grant to Exceed of rights in the revenue streams generated from the exploitation of the Recording, the Agreement expressly contemplates Exceed's facilitation of an investment offering through which it would convey to investors fractional ownership interests in an entity created by Exceed to receive that income (the "Offering").

32.    In that regard, the Agreement expressly provides—and defendants confirmed in the Agreement that they were "aware and acknowledge"—that Exceed "intends to enter into a process with the [SEC] under Regulation A, or similar regulation, such as Regulation Crowd Funding, for the SEC's qualification of [Exceed's] issuance to the general public of shares,

tokens or other units representing securities in the economic substance of the Agreement"; and that such "Shares may be sold or issued to eligible purchasers and [defendants are] supportive of" the Offering.

33.     In furtherance of the foregoing, the Agreement expressly required defendants to "do all acts and things, including executing and providing any related documents and information promptly" to effectuate the Offering.

34.     The express terms of the Agreement further required defendants to (1) ensure that all of the revenue and other amounts generated from the exploitation of the Recording "be paid to an account designated by [Exceed] in perpetuity" and (2) cause Empire "to commercially release and promote the Recording in accordance with a release plan that is at least as widespread as the release plan for [Banks's] most successful song to date."

35.     Pursuant to the Agreement, in consideration for the rights ostensibly granted to Exceed thereunder, Exceed agreed to pay the OTF/TTPMG Parties "a flat fee" in the amount of $600,000, payable in three installments: (1) fifty percent, *i.e.*, $300,000, "following satisfaction of [certain contractually-specified] Conditions Precedent"; (2) twenty-five percent, *i.e.*, an additional $150,000, upon the delivery of the Recording to Exceed; and (3) twenty-five percent *i.e.*, the remaining $150,000, upon the later to occur of (a) Banks's satisfaction of certain contractually-specified social media obligations that he assumed pursuant to the Agreement, or (b) the first sale of certain non-fungible tokens featuring Banks's "name, voice, likeness, image, performance or other publicity rights," as also specified in the Agreement.

36.     TTPMG is designated in the Agreement as the entity to which Exceed was to direct those payments in the first instance, through wire transfers to a TTPMG bank account specified in the Agreement.

37.    In the Agreement, defendants made a number of material representations and warranties upon which Exceed expressly relied in entering into and performing thereunder—including by remitting the first two contractually-required payments to the OTF/TTPMG Parties, totaling, in the aggregate, $450,000.

38.    Specifically, defendants—including the OTF/TTPMG Parties who, collectively, are represented in the Agreement (albeit once again falsely) to be the "Owner" of the Recording—represented and warranted in section 2 of the Standard Terms and Conditions incorporated in the Agreement, *inter alia*, as follows:

    a.   that they possess "the right, power and authority to enter into this Agreement and to cause [Banks] to fully perform all of [his] obligations hereunder without having to seek or obtain approval or permission from any third party";

    b.   that "neither [the OTF/TTPMG Parties] nor [Banks] is nor will be subject to any obligation, legal disability or restriction which will prevent either of them from fully complying with their obligations hereunder or which will create any liability on the part of [Exceed]";

    c.   that "the Recording and the underlying composition and lyrics are original to [the OTF/TTPMG Parties] and [Banks], respectively, and does [*sic*] not violate or infringe upon the intellectual property or other rights of any other person or entity";

    d.   that "the performance by [the OTF/TTPMG Parties] and [Banks] of each of their obligations hereunder, and the exercise by [Exceed] of the rights granted herein (including without limitation . . . the use of [Banks's] Name and Likeness . . . and

the collection and distribution of Gross Revenue) will not violate or infringe upon the rights of any third parties";

e.    that "entering into this Agreement will not violate the terms and conditions of any agreement between [the OTF/TTPMG Parties] and/or [Banks] and any third party"; and

f.    that "other than [Empire] and [Banks] pursuant to the Empire Distribution Agreement, no other person or entity is entitled to receive any Music Revenue" generated from the exploitation of the Recording.

39.    As further alleged below, Exceed now has become aware that each of the aforesaid contractual representations and warranties—and the pre-contractual representations set forth in paragraphs 16-19, 22 and 23, above—are false.

40.    At the time defendants made the foregoing contractual representations and warranties—and the pre-contractual representations set forth in paragraphs 16-19, 22 and 23, above—they were known by defendants to be false or were made with reckless disregard of facts demonstrating their falsity at the time they were made, *i.e.*, during the parties' pre-contract negotiations and when the parties entered into the Agreement (as the case may be), and were intended by defendants to induce Exceed to act in reliance on said representations and warranties in entering into and performing under the Agreement, including by paying the OTF/TTPMG Parties the payments required by the Agreement.

41.    Following the parties' entry into the Agreement, Banks publicly announced and heavily promoted the Offering, including through social media and a widely-disseminated press release. Banks's press release, which was quoted in its entirety in numerous prominent industry publications, reads as follows: "Where I'm from, few own anything. As The Voice of the

Trenches and for my label OTF, I'm always looking for ways to expand and give back to my people. Exceed makes it possible for my fans to become part of my team and share in our success together."

42.     Exceed also widely advertised and promoted the Offering, including, *inter alia*, through social media channels, Exceed's extensive email lists, web advertisements and numerous other forums. In addition, Exceed devoted significant time, effort and financial resources in seeking and obtaining required SEC qualification for the Offering.

43.     In accordance with the Agreement, on August 3, 2022 and August 15, 2022, Exceed made the first two contractually-contemplated payments to the OTF/TTPMG Parties, totaling, in the aggregate, $450,000.

44.     The OTF/TTPMG Parties remitted a significant portion of the $450,000 paid to them by Exceed under the Agreement to Banks or to an entity owned and/or controlled by Banks.

45.     Despite defendants' aforesaid detailed, comprehensive, express pre-contractual and contractual representations and warranties, on May 24, 2023 Exceed received a demand letter from Alamo Records ("Alamo"), a record label that is owned and/or controlled by Sony Music Entertainment, advising Exceed that Banks was signed to an exclusive recording agreement with Alamo and that neither defendants nor Empire possess any right, *inter alia*, to assign any interest in the revenue streams generated by exploitations of the Recording; to permit the sale of any interests in those revenue streams; or to license the use of Banks's image and likeness in connection with the Recording.

46.     Rather, as Alamo informed Exceed, Alamo possesses those (and a number of further) exclusive rights pursuant to an agreement that Alamo entered into with Banks (or

OTFEI) (the "Alamo Agreement")—which agreement, upon information and belief, *Banks personally executed*—in or around April of 2021 (as subsequently amended), *i.e.*, well over a year *before* defendants entered into, respectively, the Agreement and the Inducement.

47.     At the time the parties entered into the Agreement and the Inducement, defendants knew that Alamo possessed the exclusive rights that defendants had purported through the Agreement to grant to Exceed, or defendants acted in reckless disregard of Alamo's contractual and other legal rights in entering into the Agreement with Exceed. In that regard, Banks personally signed the Alamo Agreement *and* through a press release and social media posts enthusiastically endorsed the collaboration with Exceed regarding the Recording and received a significant portion of the payments that Exceed made under the Agreement; and Bonsu, as Banks's then manager, possessed fiduciary obligations to Banks with respect to, *inter alia*, all business transactions related to Banks's sound recordings and career as a recording artist and, upon information and belief, was actively involved in all material aspects of Banks's professional endeavors.

48.     Upon becoming apprised of Alamo's exclusive rights in the Recording—which, Exceed learned only after it had expended substantial time, effort and financial resources in pursuing the Offering, including, without limitation, making the first two of the contemplated installment payments to the OTF/TTPMG Parties under the Agreement in the aggregate amount of $450,000 (funds that, as alleged above, were distributed, in significant part, to Banks)— Exceed repeatedly demanded that defendants rectify their manifest contractual breaches, only to be met with resounding intransigence.

49.     After defendants ignored Exceed's entreaties and refused to refund to Exceed any portion of the $450,000 it had already paid to the OTF/TTPMG Parties, on July 19, 2023 Exceed

provided written notice to the OTF/TTPMG Parties pursuant to Section 6 of the Standard Terms

and Conditions incorporated in the Agreement of their material breach of the Agreement and

their concomitant obligation under Section 6 thereof to cure said breach within seven business

days of their receipt of that notice.

50.     Section 6 of the Agreement, entitled "Termination," provides, in pertinent part, as

follows:

> (a) In the event a Party materially breaches its obligations
> hereunder, the other Party may terminate this Agreement
> by written notice if such breach is not curable or if such breach is
> curable but the breaching Party does not cure the breach within
> seven (7) business days (or such shorter time as exigencies may
> require). . . .
>
> (b) The termination of this Agreement by the injured Party is a
> non-exclusive remedy and is without prejudice to any claims,
> rights and remedies it may have towards the breaching Party. The
> termination of this Agreement by the injured Party does not relieve
> the breaching Party of any of its obligations or liabilities under this
> Agreement or by law.

51.     As defendants failed to cure—or, to Exceed's knowledge, to even take any steps

to attempt to cure—their undisputed material breaches of the Agreement, on August 1, 2023

Exceed transmitted a Notice of Termination of the Agreement (the "Notice of Termination") to

defendants.

52.     In response to Exceed's Notice of Termination, defendants acknowledged, *sub

silentio*, their lack of any cognizable excuse or justification for their contractual breaches and

other failings, *i.e.*, despite Exceed's repeated entreaties, defendants have failed and refused to

attempt to remedy their manifest contractual breaches and other lapses; or to demonstrate any

willingness to take responsibility for the substantial losses that Exceed has suffered, and

continues to sustain, as the direct result of defendants' pre-contractual misrepresentations and contractual and related breaches summarized above.

53.     As a result of defendants' aforesaid material misrepresentations, contractual breaches and other failings, Exceed was compelled, *inter alia*, to cancel and withdraw the Offering—which Exceed had expended significant time, effort and financial resources in registering with the SEC, ensuring compliance with SEC rules and regulations and marketing and promoting—and to return the funds that had been invested by third parties in the Offering, further significantly damaging Exceed's reputation and relationships with its partners and investors.

54.     As defendants have failed and refused to attempt to remedy or take any responsibility for their intentional misrepresentations and material contractual breaches, Exceed was compelled to bring the present action against them.

55.     After multiple attempts by Bonsu to evade service of Exceed's initial Complaint filed in this action, Exceed was compelled to obtain a Court Order permitting alternative service on Bonsu. Although Exceed ultimately effected proper service of the Complaint on Bonsu and TTPMG, as noted earlier herein both of those defendants defaulted and failed to appear or answer the Complaint or otherwise defend in the action. In a further effort to avoid the consequences of its conduct in derogation of Exceed's legal rights, TTPMG has since dissolved.

## COUNT I
## BREAK OF CONTRACT
### (Against All Defendants)

56.     Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Second Amended Complaint, as if fully set forth herein.

57. The Agreement is a binding contractual undertaking that sets forth defendants' obligations to Exceed and contains numerous material contractual representations and warranties by defendants, as summarized in paragraphs 25-38 of this Second Amended Complaint, above.

58. As a result of Banks's execution of the Inducement, Banks *de facto* is a party to the Agreement and is jointly and severally liable thereunder in his individual capacity as if he was a direct party thereto.

59. As Bonsu executed the Agreement in his capacity as "Owner" of OTF, and as OTF is an unincorporated business entity, Bonsu *de facto* is a party to the Agreement and is jointly and severally liable thereunder in his individual capacity as if he was a direct party thereto.

60. As alleged above, defendants' foregoing contractual representations and warranties were false in numerous material respects, each of which constitutes a material breach of the Agreement by defendants.

61. Defendants' failures to comply with their other contractual obligations, as alleged above, also constitute material breaches of the Agreement by defendants.

62. As a direct and proximate result of defendants' aforesaid contractual breaches, Exceed has sustained, and continues to suffer, significant foreseeable losses including, without limitation, expectancy damages, in an amount to be determined at trial.

**COUNT II**
**FRAUD**
**(Against Defendants Durk Derrick Banks p/k/a Lil Durk and Andrew Bonsu)**

63. Plaintiff incorporates by reference in their entirety the preceding paragraphs of this Second Amended Complaint, as if fully set forth herein.

64.     Bonsu, as Banks's manager during the parties' pre-contractual negotiations (and when the parties entered into the Agreement), acted both in his individual capacity and as Banks's agent in connection with those negotiations and the parties' entry into the Agreement.

65.     OTFEI, as Banks's furnishing company, also acted as Banks's agent in connection with the parties' pre-contractual negotiations and the parties' entry into the Agreement.

66.     Additionally, as further alleged above, the OTF/TTPMG Parties represented both in the Agreement and in the discussions and negotiations with Exceed that preceded the parties' entry into the Agreement that they possessed the authority to grant to Exceed the rights in Banks's Recording as contemplated thereby; and Bonsu endorsed the pre-contractual Term Sheet as Banks's "Authorized representative." As such (and otherwise), the OTF/TTPMG Parties acted as Banks's agents in connection with those negotiations and discussions and in respect of the Agreement and the transactions contemplated thereby.

67.     In connection with the aforesaid matters, Bonsu, OTFEI and the other OTF/TTPMG Parties acted within the scope of their actual and/or apparent authority as agents of Banks.

68.     As alleged in paragraphs 16-19, 22 and 23, above, defendants knowingly and intentionally, or recklessly and without regard to the actual facts in respect thereof, made numerous misrepresentations and omissions of fact to Exceed in the discussions and negotiations with Exceed that preceded the parties' entry into the Agreement, including:

      a.    that defendants possessed the power and lawful authority to convey to Exceed rights in the revenue generated from the exploitation of the Recording;

b.  that the OTF/TTPMG Parties were "the owner of the Intellectual Property Rights" in the Recording;

c.  that the Recording was exclusively "distributed by Empire Records";

d.  that Empire possessed the authority to collect royalty revenue in respect of the streaming and other exploitation of the Recording, and Exceed was the "appropriate party" to receive "disburse[ments]" of such revenue; and

e.  that the OTF/TTPMG Parties possessed the ability to grant to Exceed through the parties' proposed "collaboration," *inter alia*, "(i) 50% of the Intellectual Property Rights attaching to the [Recording], any royalty, or other, income generated by, or because of, the [Recording], including all contract rights, licences, merchandising, logo and general rights relating to it, and any of [OTF's and TTPMG's] right to receive payments under such arrangements ('Song Income Rights'); and (ii) [the right] to create, host and issue NFTs and/or Securities, on a blockchain or other ledger selected by Exceed; and (iii) Song Income Rights, inter alia, the usage rights described above, name and likeness rights of the Artists, and the rights to use any related artwork."

69.  The foregoing representations were false when made.

70.  Defendants made the foregoing misrepresentations of fact to Exceed with the knowledge that they were false and with intent to deceive Exceed, or in reckless disregard of the actual facts concerning the same, and to induce Exceed to act in reliance thereon in entering into and performing under the Agreement, including by remitting to the OTF/TTPMG Parties payments contemplated by the Agreement.

71.     In this regard, by way of illustrative but not exhaustive example, (a) Bonsu, as Banks's manager, was a fiduciary to Banks and involved in and/or obligated to be fully apprised of all material aspects of Banks's professional activities, which included Banks's entry into the Alamo Agreement, and, as such, Bonsu knew or acted in reckless disregard of the fact that defendants did not possess the ability to grant the rights in the Recording that ostensibly were conveyed to Exceed in the Agreement; and (b) Banks signed the Alamo Agreement and is thus charged with knowledge of its terms, and thereafter publicly endorsed his collaboration with Exceed in respect of the Recording and received a significant portion of the payments that Exceed made under the Agreement, and thus knew or acted in reckless disregard of the fact that defendants did not possess the ability to grant the rights in the Recording that ostensibly were conveyed to Exceed in the Agreement.

72.     Exceed reasonably relied to its detriment on defendants' aforesaid misrepresentations of fact including, *inter alia*, by remitting to the OTF/TTPMG Parties payments contemplated by the Agreement.

73.     As alleged above, the OTF/TTPMG Parties paid a significant portion of the amounts remitted to them by Exceed to Banks or to an entity owned by Banks. By accepting and retaining the benefits derived from Bonsu's, OTFEI's and the other OTF/TTPMG Parties' misrepresentations of fact, and Banks's other conduct alleged earlier herein, including, without limitation, his promotion of the Offering, Banks ratified those defendants' fraudulent acts.

74.     As a result of the foregoing fraud by Banks and Bonsu, Exceed has sustained and continues to suffer significant losses, including, without limitation, reliance damages, in an amount to be determined at trial.

**PRAYERS FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, plaintiff Exceed Talent Capital, LLC respectfully requests that the Court enter judgment in plaintiff's favor and against defendants, as follows:

A.    Awarding plaintiff compensatory damages against defendants, as provided by applicable law, in an amount to be determined at trial;

B.    Awarding plaintiff punitive or exemplary damages against Banks and Bonsu in an amount to be determined at trial; and

C.    Granting such other and further relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Exceed Talent Capital, LLC hereby requests a jury trial on all claims and issues raised in this action that are so triable.

Dated:  March 12, 2025
        New York, New York

                                ROSENBERG, GIGER & PERALA P.C.

                                By: _____
                                    John J. Rosenberg
                                    Brett T. Perala
                                    152 W. 57th Street, 18th Floor
                                    New York, NY  10019
                                    (646) 494-5000

                                    *Attorneys for Plaintiff*